UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **THERESA BROOKS**, | |
| Plaintiff, | |
| v. | Case No. 23-cv-00447 (CRC) |
| **ALEJANDRO MAYORKAS**, | |
| Defendant. | |

## OPINION AND ORDER

In June 2018, Theresa Brooks, a correspondence analyst in Custom and Border Protection ("CBP")'s Business Operations Center, submitted a reasonable accommodation request to the agency. She reported that she had Post-Traumatic Stress Disorder ("PTSD") and requested, among other accommodations, full-time telework. This request was not resolved until a year later, when it was granted in part and denied in part. In the meantime, Brooks's relationships with her supervisors deteriorated. Brooks accused them of harassment and bullying, which she alleged exacerbated her PTSD. She subsequently made another reasonable accommodation request for full-time telework and reassignment within CBP, which was denied.

Brooks filed three Equal Employment Opportunity complaints with CBP based on the delay in resolving her first reasonable accommodation request and her conflicts with management. After those complaints were resolved in CBP's favor, first by the agency and then by the Equal Employment Opportunity Commission ("EEOC"), Brooks brought this pro se employment discrimination lawsuit against the Secretary of the Department of Homeland Security, Alejandro Mayorkas, in his official capacity. The government now moves to dismiss Brooks's complaint for failure to comply with Federal Rules of Civil Procedure 8(a) and 10(b) and failure to state a claim for relief under Rule 12(b)(6). Mindful of Brooks's pro se status, the

Court will grant the motion in part and deny it in part. The Court will dismiss, under Rule 12(b)(6), Brooks's amended complaint to the extent it attempts to raise hostile work environment, retaliation, and race and sex discrimination claims. Brooks has, however, adequately pled failure to accommodate under the Rehabilitation Act, so the Court will deny the government's motion as to that part of her amended complaint.

**I.  Background**

The Court draws the following background from Brooks's allegations, contained in her amended complaint and briefing papers, and facts gleaned from over 200 pages of exhibits that she attached to her opposition to the government's motion to dismiss. The Court must accept these allegations and facts as true at this early stage of the case. See Ho v. Garland, 106 F.4th 47, 50 (D.C. Cir. 2024).

A.  Factual Background

During the period relevant to her allegations, Ms. Brooks was a correspondence analyst in CBP's Business Operations Center. See ECF No. 2 (Am. Compl.) at 2–3 (page numbers designated by CM/ECF); ECF No. 9 (Mot. Dismiss) at 3–4. Her primary responsibilities in this role were receiving, processing, and routing congressional correspondence and reports. See ECF No. 12 (Opp'n), Ex. 14, at 117 (December 2018 email from Brooks describing her job responsibilities). As early as February 2018, Brooks was permitted to telework on days she had therapy appointments. See id., Ex. 10, at 101–04 (February 2018 telework program agreement).

In June 2018, Brooks submitted a reasonable accommodation request. Id., Ex. 2, at 29 (June 2018 reasonable accommodation request). She reported that she had PTSD and requested, among other things, full-time telework, a flexible work schedule that would allow her to work more than eight hours one day and less than eight hours another, and permission to call her

therapist from a quiet space in the office during the workday should a triggering situation arise. See id.; id., Ex. 11, at 108 (letter from Mary Beth Williams, Ph.D., LCSW, supplementing June 2018 reasonable accommodation request). In July 2018, Brooks provided CBP with additional documentation from her psychiatrist, Dr. Wesley Dickerson, to support this request. See id., Ex. 6, at 80 (July 2018 letter from Dr. Dickerson in support of Brooks's reasonable accommodation request); id., Ex. 7, at 83–85 (June 2019 response to June 2018 reasonable accommodation request acknowledging July 2018 receipt of Dr. Dickerson's letter).

Brooks's reasonable accommodation request was not resolved for a year. See id., Ex. 7, at 83–85. While it remained pending, Brooks, her union chapter president, and her therapist repeatedly contacted CBP management about its status. See, e.g., id., Ex. 3, at 34 (June 2018 letter from union chapter president); id., Ex. 6, at 57–59 (February 2019 emails from Brooks to her first-line supervisor and reasonable accommodation coordinator); id., Ex. 16, at 81 (March 2019 letter from Williams). In this correspondence, management acknowledged CBP's general policy of resolving accommodation requests within fifteen days. See id., Ex. 3, at 34 (June 2018 response from Brooks's former supervisor to union chapter president stating that "[she] believe[d] [she] ha[d] 15 days"); id., Ex. 5, at 50 (July 2018 email from former supervisor to CBP Reasonable Accommodation Coordinator asking for guidance on next steps because "[w]e are way past the 15 day requirement"); id., Ex. 9, at 92–93 (CBP Reasonable Accommodation Procedures).

During that same period, Brooks complained to the agency about her first-line supervisor, Carol Gladden. She reported that she and Ms. Gladden were having communication issues, and that the animosity between them triggered her PTSD. See, e.g., id., Ex. 14, at 116–20 (December 2018 email exchanges between Brooks and various CBP Deputy Executive

3

Directors).  Brooks further asserted that Gladden was interfering with her existing telework arrangement.  Id. at 120.  For example, Gladden asked Brooks to clock in and out while teleworking, even though this reporting was not generally required.  See id., Ex. 22, at 157–61 (January 2020 emails between Gladden and Brooks).  Brooks and management discussed the possibility of her lateral transfer.  Id., Ex. 14, at 116–18.

Brooks's reasonable accommodation request was finally resolved in June 2019.  Id., Ex. 7, at 83–85.  CBP granted some of her requested accommodations, including telework on Tuesdays, Wednesdays, and Thursdays, but denied others, including telework on Mondays and Fridays and the ability to "flex" hours between days of the week.  Id. at 84.  CBP explained that Brooks was the sole correspondence analyst in her office, and certain of her job responsibilities required her to be onsite at specific times.  Id. at 83–84.

In July 2019, Brooks filed her first Equal Employment Opportunity ("EEO") complaint with CBP (Case No. 12190-2019), in which she alleged discrimination based on race, color, age, and disability, as well as retaliation for her prior EEO activity.  Id., Ex. 18, at 133–40 (Case No. 12190-2019 EEO counselor's report).  She grounded these claims on the delay in resolving her June 2018 reasonable accommodation request, as well as Gladden's alleged harassment.  See id. She requested a lateral transfer and other forms of relief.  Id. at 136.

In January 2020, Brooks submitted another reasonable accommodation request seeking full-time telework and reassignment within CBP.  Id., Ex. 20, at 145 (January 2020 reasonable accommodation request).  That month, Brooks received an email from Daniel Mattina, a higher-up in her chain of command, offering her a lateral reassignment "with the understanding" that, in exchange, she would "drop [her] [2019] EEO complaint regarding alleged harassment for which

[her] sought remedy [was] reassignment." Id., Ex. 23, at 180. By February, this position was no longer available. See id., Ex. 23, at 168 (February 2020 email to Brooks from EEO counselor).

In March, Brooks's January 2020 reasonable accommodation request was denied. Id., Ex. 20, at 147–49 (March 2020 response to January 2020 reasonable accommodation request). That same month, Brooks and Mattina had a conversation during which Mattina allegedly spoke to Brooks "aggressively," causing her to feel "bullied and disrespected." Am. Compl. at 2–3. She told Mattina that she wanted to set up a meeting with his boss, Vernon Foret. See id. Mattina told her he would schedule the appointment but did not follow up. Id. Brooks proceeded to contact Foret's executive assistant directly. Id.

Gladden subsequently sent Brooks an official letter of reprimand, in which she criticized Brooks's "failure to properly request leave and . . . to follow the chain of command." Opp'n, Ex. 21, at 151–53. The letter admonished Brooks for taking sick leave for a recurring medical appointment without requesting it in advance (as she had been instructed to do). Id. at 151. It also described, as "disrespectful and unprofessional," her contacting Foret's assistant "to schedule a meeting with higher-level management without adhering to the chain of command" after Mattina told her Foret was "unavailable due to mission priorities." Id.

Brooks went on leave from April to June 2020. Id. at 13. In May 2020, she filed a second EEO complaint (Case No. 520-2020), alleging disability discrimination and harassment, as well as retaliation for prior EEO activity. See Mot. Dismiss, Ex. B, at 31–32 (EEOC decision affirming CBP's conclusion). She supported this claim with the letter of reprimand, as well as the fact that she had not been transferred to another supervisor or given the temporary duty assignment she requested. Id. at 32.

5

Brooks returned to work that summer and accepted a lateral transfer in September 2020. See Am. Compl. at 2. She then made a third EEO complaint (Case No. 2202-2020) based on an email interaction she had with Dennis McKenzie, a Deputy Executive Director outside her chain of command. See Opp'n, Ex. 27, at 193–96. After Brooks sent Mr. McKenzie instructions to reformat a letter on official letterhead, McKenzie replied to Brooks (and others within CBP):

> I must say in my career I have never seen anything like this. Where a GS-15 DXD is tasked to cut and paste an electronic word document onto an electronic word document containing letter head. Especially when the sender forwards both documents to the DXD. I seriously had to take a drive I was so mad. Something is seriously broken when it takes a GS-15 to close out a document. This has gone beyond ridiculous.

Am. Compl. at 4. Brooks alleged that McKenzie responded this way "because she is an older African-American female and he is a white male." Opp'n, Ex. 27, at 194.

Brooks's three EEO complaints were all resolved in the agency's favor and affirmed by the EEOC on appeal. See Mot. Dismiss, Ex. A, at 25–29 (EEOC Decision in Case No. 1219-2019); Ex. B, at 31–36 (EEOC Decision in Case No. 520-2020); Ex. C, at 38–42 (EEOC Decision in Case No. 2202-2020).

B. Procedural Background

In February 2023, Brooks filed this lawsuit, which she framed as an "appeal" of the three EEOC decisions. See ECF No. 1 (Compl.). She subsequently filed an amended complaint seeking reasonable accommodation, lost wages, and damages for emotional distress. See Am. Compl. The government now moves to dismiss, arguing that Brooks's amended complaint fails to comply with Federal Rules of Civil Procedure 8(a) and 10(b) or state a claim under Rule 12(b)(6). Mot. Dismiss. at 9–21. Brooks submitted an opposition and attached over 200 pages of exhibits. See Opp'n.

## II. Legal Standards

Federal Rule of Civil Procedure 8(a) requires a complaint to "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  "The purpose of the rule is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer[] [and] prepare an adequate defense[.]"  Brown v. Califano, 75 F.R.D. 497, 498 (D.D.C. 1977).  Federal Rule of Civil Procedure 10(b) requires that a complaint "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances," Fed. R. Civ. P. 10(b), so that "[a] defendant tasked with answering the [c]omplaint" can "know where to begin" in response, Lacy v. Tenn. Civ. Rule 15g Third Party, No. CV 22-3537 (JMC), 2022 WL 17735643, at *2 (D.D.C. Dec. 16, 2022).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must present "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible on its face if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The court "assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor but is not required to accept the plaintiff's legal conclusions as correct."  Sissel v. U.S. Dep't of Health & Hum. Servs., 760 F.3d 1, 4 (D.C. Cir. 2014) (citation omitted).

"[T]he pleadings of pro se parties are to be 'liberally construed' and 'held to less stringent standards than formal pleadings drafted by lawyers[.]'"  Tyson v. Brennan, 277 F. Supp. 3d 28, 35 (D.D.C. 2017) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)), aff'd, No.

18-5033, 2018 WL 5927921 (D.C. Cir. Nov. 7, 2018).  A pro se litigant's complaint must be evaluated "in light of all filings, including filings responsive to a motion to dismiss, which here includes [plaintiff's] opposition to the motion to dismiss and attached exhibits." Ho, 106 F.4th at 50 (quotation marks omitted) (quoting Brown v. Whole Foods Mkt. Grp., Inc., 789 F.3d 146, 152 (D.C. Cir. 2015)).

### III. Analysis

As a threshold matter, though Brooks frames her amended complaint as an "appeal[]" from the three EEOC decisions, those decisions are not the subject of review here.  Am. Compl. at 1–3.  The Court does not have appellate jurisdiction over EEOC decisions.  Instead, the Court will consider the EEOC decisions only to the extent they bear on whether Brooks has plausibly stated a claim for relief.

#### A. Rules 8(a) and 10(b)

The government first argues that Brooks's amended complaint should be dismissed for failure to comply with Rules 8(a) and 10(b).  Mot. Dismiss at 9–11.  It contends that, because Brooks has not advanced "a short and plain statement of legal violations and plausible claims," it cannot "offer a coherent response." Id. at 10.

Though it is quite tempted, mindful of the liberal-construction standard afforded to pro se litigants, the Court declines to dismiss Brooks's amended complaint for failure to comply with Rules 8(a) or 10(b).  True, her amended complaint is far from a "model of clarity." Id. at 2.  It is not organized according to specific claims, and many of its supporting factual allegations are scattered throughout the 200-plus pages of exhibits attached to Brooks's opposition.  The Court, however, has dutifully heeded the Circuit's admonition in Ho to consider Brooks's amended complaint "in light of all filings, including filings responsive to a motion to dismiss, which here

8

includes [Brooks's] opposition to the motion to dismiss and attached exhibits." 106 F.4th at 50 (quotation marks omitted) (quoting Brown, 789 F.3d at 152). Viewed in this context, the amended complaint attempts to allege failure-to-accommodate, hostile work environment, retaliation, and discrimination claims under the Rehabilitation Act and Title VII of the Civil Rights Act; indeed, that is how the government characterized her claims in moving to dismiss. See Mot. Dismiss at 11–21. The Court will therefore proceed to evaluate whether she has met the Rule 12(b)(6) pleading requirement for these claims, rather than dismiss on Rule 8(a) or 10(b) grounds.

    B. Rule 12(b)(6)

        *1. Failure to Accommodate*

Brooks first asserts that she is "an American disabled veteran, protected by the American[s] with Disabilities Act and [her] agency failed to comply with that policy." Am. Compl. at 1. The Rehabilitation Act, not the Americans with Disabilities Act (ADA), protects federal employees from disability discrimination. See Ward v. McDonald, 762 F.3d 24, 28 (D.C. Cir. 2014). Accordingly, the Court construes Brooks's claim as if it were brought under the Rehabilitation Act, which "incorporates the standards applied under the . . . ADA." Id. (parentheses omitted); cf. Castro v. United States, 540 U.S. 375, 381–82 (2003) ("Federal courts sometimes will . . . recharacterize . . . [a pro se litigant's] motion . . . to create a better correspondence between the substance of a pro se motion's claim and its underlying legal basis[.]").

"One form of prohibited discrimination" under the Rehabilitation Act "is to 'not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability[.]'" Ali v. Regan, 111 F.4th 1264, 1268 (D.C. Cir. 2024)

9

(alterations in original) (quoting 42 U.S.C. § 12112(b)(5)(A)).  To make out a failure-to-accommodate claim under the Rehabilitation Act, a federal employee must allege that "(1) [s]he is disabled, (2) [her] employer had notice of the disability, and (3) the employer denied [her] request for a reasonable accommodation."  Id. at 1269.  Brooks has plausibly alleged that she has a disability, and that CBP knew of and failed to accommodate this disability.  The Court will therefore deny the government's motion to dismiss that claim.

          a.   Disability

An individual is disabled under the Rehabilitation Act if he or she (1) has "a physical or mental impairment that substantially limits one or more major life activities of such individual;" (2) has "a record of such an impairment;" or (3) is "regarded as having such an impairment[.]" 42 U.S.C. § 12102(1) (ADA definition of disability incorporated in the Rehabilitation Act). Brooks has presented a colorable argument that she is disabled within the meaning of the Rehabilitation Act.

In her amended complaint, Brooks states that she is "disabled" and has experienced "anxiety and depression."  Am. Compl. at 1–2.  In her opposition to the government's motion to dismiss, Brooks clarifies that she "has a documented history of a mental disability," "PTSD." Opp'n at 8 (parentheses omitted).  EEOC regulations specifically list PTSD as an impairment that "substantially limit[s] brain function" and thus "should easily" meet the requirements for a disability under the statute.  29 C.F.R. § 1630.2(j)(3)(iii).  And several exhibits Brooks and the government reference discuss her PTSD and its impact on her functioning.  See, e.g., Opp'n, Ex. 2, at 29 (June 2018 reasonable accommodation request describing her medical accommodation requiring accommodation as PTSD); id., Ex. 11, at 108 (letter from Williams stating that "Theresa Brooks has been meeting with me in PTSD-related counseling for approximately two

years" and "[d]uring that time she has had several incidents while on the job that have led to an exacerbation of her PTSD symptoms"); id., Ex. 19, at 143 (November 2019 letter from Dr. Dickerson describing Brooks's "worsening anxiety, lack of sleep, physical fatigue, reduced concentration and impaired work performance"); id., Ex. 11, at 106 (Department of Veterans Affairs benefits letter reporting that Brooks's PTSD was 50% disabling as of 2015 and 100% disabling as of October 2022); ECF No. 16 (Reply) at 2–3 (discussing letters from Williams and the VA). Consequently, Brooks has plausibly pled that she is disabled.

The government nonetheless contends that Brooks has offered no evidence that she meets the legal requirements for a person with a disability. See Mot. Dismiss at 12. First, it urges the Court to "take judicial notice that in Plaintiff's first administrative appeal, the EEOC found that Plaintiff was not disabled." Id. To the extent the government asks the Court to adopt the EEOC's disability determination as its own, the Court rejects this request. Putting aside the Court's responsibility to make such findings for itself, at the motion-to-dismiss stage, the issue is not whether Brooks is in fact disabled; it is whether her complaint contains sufficient factual matter to plausibly support a finding that she is disabled.

Next, the government points to the July 2018 letter Dr. Dickerson submitted in support of Brooks's June 2018 reasonable accommodation request. Reply at 3; id., Ex. 3, at 10–11; see also Opp'n, Ex. 6, at 80 (same letter). The letter states that "Brooks does not have any medical restriction with regards to her ability to perform the requirements of her job," and while her "condition can moderately impair her sleep," "[i]t is otherwise not clear that her impairment would limit a major life activity." Reply, Ex. 3, at 10. But that same letter also documented that Brooks "report[ed] periods of distress when triggered" and had a "[c]hronic impairment," her PTSD. Id.

This letter ultimately might weigh against finding that Brooks is disabled within the meaning of the statute. But, again, making such a finding is not the Court's job at the motion-to-dismiss stage. Instead, it is tasked only with assessing whether Brooks's filings, considered as a whole and in light of her pro se status, sufficiently allege that she is disabled under the Rehabilitation Act. They do.

### b. Notice

Brooks has also plausibly pled that CBP knew of her alleged disability. Most relevant, the June 2019 letter resolving Brooks's June 2018 reasonable accommodation request, which she referenced in her amended complaint and opposition and attached as an exhibit to her opposition, acknowledged that Brooks "stated that . . . [she] experience[d] symptoms of Post-Traumatic Stress Disorder, which inhibit[ed] [her] ability to concentrate and cause[d] [her] anxiety." Opp'n, Ex. 7, at 83. And the government does not appear to contest that it knew of Brooks's alleged disability.

### c. Denial of Reasonable Accommodation Request

Finally, Brooks avers that she was denied a reasonable accommodation because CBP did not resolve her reasonable accommodation request for a year and because CBP denied her request for a transfer. See Am. Compl. at 1; Opp'n at 2–6. Brooks ultimately applied for and received a transfer in September 2020, see Am. Compl. at 2, so the Court understands both these contentions as variations of a delay argument.

"Under the Rehabilitation Act and the ADA, an employee's notification that she has a disability and request for an accommodation triggers an 'interactive process'—a 'flexible give-and-take between employer and employee so that together they can determine what accommodation would enable the employee to continue working.'" Matos v. DeVos, 317 F.

12

Supp. 3d 489, 496–97 (D.D.C. 2018) (Cooper, J.) (quoting Ward, 762 F.3d at 32), aff'd, No. 18-5281, 2019 WL 2563721 (D.C. Cir. June 3, 2019). "To determine whether the employer held up its end of th[is] bargain, courts look to factors such as whether the employer 'obstructs or delays the interactive process' or 'fails to communicate, by way of initiation or response.'" Id. (quoting Ward, 762 F.3d at 32).

"[T]here are certainly circumstances in which a 'long-delayed accommodation could be considered' unreasonable and hence 'actionable[.]'" Mogenhan v. Napolitano, 613 F.3d 1162, 1168 (D.C. Cir. 2010) (citation omitted). "In determining whether a particular delay is unreasonable, courts look to factors such as 'the length of the delay, the reasons for the delay, whether the employer has offered any alternative accommodations while evaluating a particular request, and whether the employer has acted in good faith.'" Matos, 317 F. Supp. 3d at 499 (quoting Selenke v. Med. Imaging of Colo., 248 F.3d 1249, 1262–63 (10th Cir. 2001)).

Here, Brooks has pled that she was denied resolution of her reasonable accommodation for a year despite her repeated attempts to follow up on its status and a CBP policy of generally resolving accommodation requests within fifteen days. See Opp'n at 2–6. That is sufficient to survive a motion to dismiss because the Court cannot conclude on the evidence before it that this delay was reasonable as a matter of law. To survive a summary judgment motion, however, Brooks would need to offer more evidence that the delay was "unreasonable" based on the factors laid out in Matos. See 317 F. Supp. 3d at 49. For example, the Court sees nothing in Brooks's filings to suggest that CBP failed to engage in the interactive process in good faith. Therefore, at this stage, the Court holds only that Brooks has offered sufficient factual evidence that her reasonable accommodation was subject to a long delay, which may effectively constitute denial.

In sum, Brooks has adequately pled disability, notice, and denial of a reasonable accommodation. Accordingly, she has stated a plausible failure-to-accommodate claim, so the Court will deny the government's motion to dismiss on this ground.

### 2. *Hostile Work Environment*

Brooks next alleges that she "was literally working in a hostile work environment." Am. Compl. at 1–2. To make out a hostile work environment claim under the Rehabilitation Act or Title VII, "a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Baloch v. Kempthorne, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." Id. A plaintiff advancing a hostile work environment claim must plead that the complained-of behavior was based on a protected characteristic. Byrd v. Vilsack, 931 F. Supp. 2d 27, 45 (D.D.C. 2013) (citing Davis v. Coastal Int'l Sec., Inc., 275 F.3d 1119, 1123 (D.C. Cir 2002)).

Brooks's hostile work environment claim centers on her relationships with Carol Gladden, who was her first-line supervisor; Daniel Mattina, a higher-up in her chain of command; and Dennis McKenzie, who was outside her chain of command. Brooks claims that she and Gladden generally struggled to communicate, and that Gladden "[spoke] down to her, demean[ed] her[,] and cut[] her off." Opp'n at 10. As to Mattina, Brooks contends that he "bullied and discriminated against" her, was "rude" to her, and spoke to her "aggressively." Am. Compl. at 2–3.

Brooks also offers a few specific instances of alleged harassment. She suggests that Gladden attempted to interfere with her telework accommodation by unnecessarily requiring her to check in and out via email while teleworking. Opp'n at 12. And she points to the email she received from McKenzie where he said he had "never seen anything like" her request that he reformat a letter and "seriously had to take a drive [he] was so mad." Am. Compl. at 4. Brooks asserts that the email led her to believe that McKenzie "had a personal issue with [her], women, or African Americans." Id. Brooks further alleges that McKenzie sent the email to make it appear as if she was not doing her job properly while, in reality, he wanted to target her because of her disability. Id. at 4–5. As support for this contention, she relies on McKenzie's affidavit in one of her EEO proceedings, see id., where he described her medical condition as "anxiety and possible paranoia," see Opp'n at 13.

Brooks's general allegations about her conflicts with Gladden and Mattina do not amount to a hostile work environment claim. Even if Gladden and Mattina were "impolite, rude, and insensitive" to Brooks, she has not shown that their treatment of her rose to "the level of severe and pervasive harassment necessary to maintain a claim for a hostile work environment under Title VII or the Rehabilitation Act." Porter v. Jackson, 668 F. Supp. 2d 222, 236 (D.D.C. 2009), aff'd, 410 F. App'x 348 (D.C. Cir. 2010). Nor, more significantly, has she alleged that Gladden and Mattina engaged in any of this complained-of behavior on the basis of a protected characteristic. As to McKenzie's email, nothing about it indicates discriminatory animus; to the contrary, McKenzie appears to have been upset about Brooks's job performance. Therefore, Brooks has not adequately pled that she was subjected to a hostile work environment.

> *3. Retaliation*

Brooks further claims she was "retaliated [against] because of [her] previous EEO activity." Am. Compl. at 2–3. Both the Rehabilitation Act and Title VII forbid retaliation against individuals who seek to vindicate their rights under those statutes. See Baloch, 550 F.3d at 1196. "To prove retaliation, the plaintiff generally must establish that he or she suffered (i) a materially adverse action (ii) because he or she had brought or threatened to bring a discrimination claim." Id. (citing 42 U.S.C. § 2000e–3(a); 29 U.S.C. §§ 701 et seq.). An action is "materially adverse" if "it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quoting Rochon v. Gonzalez, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

Brooks provides two potential instances of alleged retaliation. First, she points to the letter of reprimand she received from Gladden based, in part, on Brooks's attempt to go outside her chain of command and complain to Vernon Foret that she felt "bullied and disrespected" by Mattina. Am. Compl. at 2. Second, Brooks cites an email she received from Mattina in which he offered her a lateral assignment "with the understanding" that she would "drop [her] EEO complaint regarding alleged harassment for which [her] sought remedy [was] reassignment." Opp'n at 12; id., Ex. 23, at 180.

Accepting these allegations as true, they do not state a claim for retaliation. Consider first the letter of reprimand. Assuming Brooks engaged in protected activity by attempting to complain about Mattina's behavior to his superior, she has not pled that she was subjected to a "materially adverse action" as a result. "Letters of counseling or reprimand are not adverse actions when they 'contain[ ] no abusive language, but rather job-related constructive criticism,' nor when they fail to affect the plaintiff's salary, bonus, or other benefits." Spence v. U.S. Dep't

16

of Veterans Affs., 109 F.4th 531, 540 (D.C. Cir. 2024) (alteration in original) (first quoting Baloch, 550 F.3d at 1199; and then quoting Weber v. Battista, 494 F.3d 179, 185 (D.C. Cir. 2007)). Here, Gladden's description of Brooks's attempt "to meet[] with higher-level management without adhering to the chain of command [as] disrespectful and unprofessional," Opp'n, Ex. 21, at 151, was not "abusive," Spence, 109 F.4th at 540. Nor has Brooks alleged that the letter affected her salary, bonus, or benefits in any way.

Mattina's offer to reassign Brooks in exchange for dropping her EEO complaint also cannot support a retaliation claim because Brooks has not plausibly pled that it was an "adverse personnel action." Mattina offered Brooks the exact relief she requested in her June 2019 EEO complaint. See Opp'n, Ex. 18, at 136. Moreover, Brooks has not suggested that she was ultimately denied the reassignment because she did not agree to drop the complaint. Instead, the exhibits attached to her opposition indicate that the position simply became unavailable. See id., Ex. 23, at 168.

The Court therefore concludes that Brooks has not stated a retaliation claim.

    *4. Race or Sex Discrimination*

Finally, the Court considers whether Brooks has plausibly pled race or sex discrimination based on her email exchange with McKenzie. Under Title VII, "the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability." Baloch, 550 F.3d at 1196 (citing 42 U.S.C. § 2000e–16(a)).

Brooks asserts that McKenzie sent her the email because he had "a personal issue with [her], women, or African Americans." Am. Compl. at 4. But she has not pled any facts to

17

support this conclusory assertion of discriminatory animus. As a result, Brooks has failed to make out a prima facie case of sex or race discrimination.

* * *

Unable to discern any colorable allegations of a hostile work environment, retaliation, or sex or race discrimination, the Court will grant the government's motion as to these claims. But because Brooks has plausibly pled that CBP failed to accommodate her disability in violation of the Rehabilitation Act, the Court will allow that claim to proceed. While Brooks will need to come forward with stronger evidence to survive summary judgment on this claim, she has done enough to clear the relatively low pleading bar at this stage of the case.

## IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that [ECF No. 9] Defendant's Motion to Dismiss is GRANTED in part DENIED in part. It is further

**ORDERED** that Defendant shall file an answer to Brooks's Rehabilitation Act claim, as construed by the Court in this Opinion, by October 11, 2024.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date: September 27, 2024